Ruffin, Chief Justice,
after stating the case as above, proceeded as follows: On all the points in this case, which are open to the action of this Court, our opinion accords with that delivered in the Superior Court. Perhaps, if the jury had been fully informed of the course of business transacted by a bill-broker, and of the state of trade in New York towards the end of the year 1836, they might, in a civil cause, have felt it their duty to infer, from the evidence and circumstances, that Buck paid over to Wykoff all the money he got or was able to get for the notes, excepting only his commission of 1-2 per cent., which does not seem to have been an unusual or unreasonable compensation. But for this error of the jury, if it be an error, the only remedy is a new trial, granted on the ground that the verdict was against the evidence or the weight of evidence; and to grant or to refuse a new trial upon that, or asimilar ground, rests exclusively in the sound discretion of the Judge who presided at the trial. This Court could not interpose, although it might appear clearly, in our opinion, that injustice had been done by the verdict. If injustice has been done to the defendant at all, it seems to us to consist entirely in the erroneous conclusion on this question of fact, which the jury adopted, and not in the misdirection by the Court.
If the jury had believed that Buck got from the person to *316 whom he passed the notes, no more money than he paid over to Wykoff, then they must, according to the instructions, have found for the defendant; for his Honor stated explicitly that in that case the contracts were usurious and the notés void. With this instruction we fully concur, as the notes' were endorsed for the accommodation of the maker, and had not been put into circulation until passed by Buck, as the agent of the maker. Ruffin v. Armstrong, 2 Hawks, 411. With that instruction the defendant, we think, ought to have been satisfied, and placed his case before the jury on the truth of the fact hypothetically stated in the instruction. But the defendant declined leaving the case upon that point, and moved a further instruction, that if Wyko.ff received only the sums stated by him, the notes were usurious, no matter what passed between the broker and the vendee of the notes. This was refused by the Court, as we think, properly.
it is not to be assumed broker, un-negotiate *° notes in market for another the’best' fcower them Especially ■when athird found to be the hoidc1, and it appears that he acted as broker in gao£ faith*
The correctness of the instruction as prayed for, is urged upon several grounds; none of which strike ns as sound. It js sai¿}; in argument here, that the defendant is at liberty to consider Buck himself to have been the discounter, in which case there was, unquestionably, usury. But, without some upon the point, it cannot be admitted or assumed , , . . . , a bill-broker, undertaking to negotiate notes m the market for another person, upon the best terms in his power them on his own account — especially when a third per. is found to be the holder, and the testimony of Wykoff excludes the idea that Buck acted otherwise than as broker p.ooc[ faim. Besides, the very terms of the instruction, admit him thus to have acted, since it is supposed t therein that gomet|ráng passe¿ between Buck, as broker, and a vendee of the notes.
Again, it is contended here, as in the Superior Court, that the broker is the agent of both the maker and the purchaser of the notes; and therefore, as the agent of the discounter, paid the maker a less sum for the notes than he ought; which constitutes usury against the discounter. Neither the premises, as here stated,nor the deduction from them, can be sanctioned by the Court. A person may, by placing money in his hands for that purpose, or otherwise, make a broker his *317 agent to buy notes; and if the person thus constituted agent, undertake to sell notes for another person, and by virtue of his several powers from his principals respectively, make a bargain with himself, purporting to be a discounting of the note at usurious interest, and hand over the note to him for' whom he was to buy at that rate, and the money to the former owner of the note; it may be admitted to be an usurious contract, entered into by the parties through their agent — the same person happening to be the agent of each. But there is nothing in the character of a bill-broker, or in his transac-tio ns, that necessarily constitutes him the agent of both the seller and buyer of paper passing through his hands. The contrary is to be inferred; and it is to be supposed that he is the agent of one only, because, after contracting with one, it is inconsistent with the interest of that one, and with the broker’s duty to him to undertake the same office for the other party. . Besides, the argument is altogether fallacious in this: that it visits upon the purchaser of the note the consequences of the dishonesty of the broker in withholding from the original owner of the note, a part of the price actually placed into his hands, by the purchaser — and this, upon the alleged ground that the broker is the agent of the purchaser, and that the latter is consequently bound by the acts of the former. Now, the argument admits the broker, in this case, to be at least equally as much the agent of the seller, as of the purchaser; and that being so, it follows that when the purchaser pays to the broker the full price for the note, deducting only legal interest, he, in so doing, pays it to the seller self. Consequently, the subsequent abstraction of the price, in whole, or in part, by the broker from his principal, the maker of the note, cannot affect the assignee of the note with . i • i • . n . , an implied imputation of corruption from usury, when, m fact, there was no corruption on the part of the assignee, but the full value was paid by him. The proposition, from which conclusions thus contradictory, can be legitimately drawn, must be unsound in itself. The truth is, this broker was not the agent of both the parties, but. only of the one who, according to the evidence, employed him; namely, Wykoff, the maker of the note. The broker did not deal *318 for the purchaser, but with him, and ón behalf of the seller. The assumption then of the joint agency of Buck, being unfounded, the argument built upon it must also fall.
, , may be ii,e agent of andabscTof' the seiieyf in th,a character, by acting for each of his principals in the usurious discount of a not}, may make a contract, which may be an usurious one, enter’d into by the principals through the broker, as their common agent* But there is nothing in the character of a bill broker, or in his transactions, that necessarily constitutes him the a-°fIboth and buyer pLsiligt'hro llis the contrary is to hem-[fiTto Te the agent of becausef'af-one,_itisin-wll|>lhe interest of
that one & -with the -tj'to him, t°ke'’the" same office party.
From the remaining terms of the insruction prayed for, an^ taking it in connexion with the instructions previously given, it is substantially, that the contract of the purchaser was corrupt and usurious, although he might have paid to Buck the full, sums mentioned in the notes, deducting only the interest for the time they had to run, and after the rate prescribed by the statue — provided, and because Buck paid over to Wykoff a less sum, but kept back a part thereof, over and above his reasonable commission. The expression “no matter what passed between the broker and the vendee of the notes,” can be understood in no other sense, when it is recollected, that the court had just informed the jury that, if Buck received no more than he paid to Wykoff, then the purchaser was guilty of usury. It was to supply an alleged defect in that instruction, that the further one was prayed; which must, therefore, mean that if Buck had received more than he paid over to Wykoff and even received the whole sums mentioned in the notes, the purchaser would still be guilty of usury, simply by reason of Buck’s dishonestly keeping back part of the price — a proposition so unreasonable in itself, that as soon as it is stated, so as to be understood, it must be rejected.
The judgment is affirmed.
Per Curiam. Judgment affirmed.